UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARK WHELAN & CHRIS COOK,<br><br>Plaintiffs,<br><br>v.<br><br>THOMAS DOWNIE; DOWCAR METALS, INC.; PETER KNOPPERT; PK CONSULTING LLC; SAMUEL SCRIVANICH; LAWRENCE "LARRY" SCRIVANICH; BRIDGES WEST, LLC; and WORKFORCE MODULARS LLC,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br>1. **BREACH OF CONTRACT**<br>2. **TORTIOUS INTERFERENCE WITH EXISTING CONTRACT**<br>3. **BREACH OF FIDUCIARY DUTY**<br>4. **CIVIL CONSPIRACY**<br>5. **UNJUST ENRICHMENT**<br>6. **DECLARATORY JUDGMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Mark Whelan ("Whelan") and Chris Cook ("Cook"), by and through their counsel, allege as follows:

**INTRODUCTION AND NATURE OF DISPUTE**

This action arises from a breached partnership agreement between Plaintiffs and Defendant Thomas Downie and their planned acquisition and resale of 599 modular housing (defined below as the Keystone Assets). Plaintiffs identified the opportunity to purchase the Keystone Assets for under $10 million and resell them for approximately $100 million, and recruited Downie to form a partnership. Downie's role was to obtain financing for the partnership to purchase the assets. Instead, Downie obtained Plaintiff's plan and pursued it for himself with the co-Defendants and cut Plaintiffs out. Plaintiffs seek damages, equitable relief, and a declaratory judgment to restore their rightful share of the partnership's profits and assets.

COMPLAINT - 1

**PARTIES**

1. Plaintiff Mark Whelan ("Whelan") is an individual and citizen of Canada residing in Calgary, Alberta, Canada.

2. Plaintiff Chris Cook ("Cook") is an individual and citizen of Canada residing in Chilliwack, British Columbia, Canada.

3. Defendant Thomas Downie ("Downie") is an individual and citizen of the State of Washington residing in King County, Washington.

4. Defendant Dowcar Metals Inc. ("Dowcar") is incorporated under the laws of the State of Washington, with its principal office located in King County, Washington. Upon information and belief, Thomas Downie is the sole shareholder of Dowcar.

5. Defendant Peter Knoppert ("Knoppert") is an individual and citizen of the State of California residing in Laguna Niguel, California.

6. Defendant PK Consulting LLC ("PK Consulting") is California limited liability company with its principal office located in Monarch Beach, California. Upon information and belief, Peter Knoppert is the sole member of PK Consulting.

7. Defendant Samuel "Sam" Scrivanich, ("S. Scrivanich") is an individual and the son of L. Scrivanich. Upon information and belief, S. Scrivanich is a citizen of the State of Washington and resides in King County, Washington.

8. Defendant Lawrence "Larry" Scrivanich, ("L. Scrivanich") is an individual and the father of S. Scrivanich. Upon information and belief L. Scrivanich is a citizen of the State of Washington and resides in King County, Washington.

9. Defendant Bridges West, LLC ("Bridges West"), is a Washington limited liability company with its principal office in King County, Washington. On information and belief, S. and L. Scrivanich are Governors of Bridges West.

10. Defendant Workforce Modulars LLC ("Workforce Modulars") is a Washington limited liability company formed on December 10, 2021, with its principal office in King

COMPLAINT - 2

4853-3395-1204.2

Miller Nash LLP
605 5th Ave S, Ste 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

County, Washington. On information and belief, L. Scrivanich is a Governor of Workforce Modulars.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) and 28 U.S.C. § 1367(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is a civil action by citizens of Canada asserting state-law claims against citizens of Washington and California, and entities incorporated or organized under the laws of the United States.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because a substantial part of the events or omissions giving rise to the claims occurred in this district, including the formation and breach of the Cook/Whelan–Downie Partnership (defined below) and Defendants' tortious actions; and most Defendants reside in this district, including Downie, Dowcar, S. Scrivanich, L. Scrivanich, Bridges West, and Workforce Modulars.

13. This Court has general personal jurisdiction over the Defendants because they reside or conduct significant business in the State of Washington and/or committed acts that give rise to this litigation in this district.

14. This Court also has specific personal jurisdiction over the Defendants under Washington's Long Arm Statute, RCW 4.28.185, and the United States and State of Washington constitutional requirements of due process, in that Defendants, individually or acting through their apparent agents, committed one or more of the following: (A) transacted business in Washington (RCW 4.28.185.(a)); (B) committed, and/or conspired to commit, a tortious act within Washington (RCW 4.28.185(b)); and (C) owned, used, or possessed real or personal property situated within Washington (RCW 4.28.185(c)).

COMPLAINT - 3

4853-3395-1204.2

Miller Nash LLP
605 5th Ave S, Ste 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

# FACTS

15. In January 2021, Plaintiffs Cook and Whelan ("Plaintiffs") identified an opportunity to profit from the liquidation of modular housing units and other assets owned by TransCanada Keystone Pipeline L.P. ("TransCanada") following the Biden Administration's cancellation of the Keystone XL pipeline (the "Keystone Assets"). Plaintiffs researched the Keystone Assets and determined their plan could be worth approximately $100,000,000.00.

16. Cook and Whelan needed financing to acquire the Keystone Assets and formed a partnership with Downie to pursue this opportunity (the "Cook/Whelan–Downie Partnership" or "Partnership") in or around March of 2021.

17. Cook, Whelan, and Downie formed the Partnership orally and agreed on each partner's role. Cook and Whelan agreed to obtain and provide to Downie the list of the Keystone Assets available for sale along with contact and purchase information necessary to facilitate the transaction. In exchange, Downie agreed to secure the financing necessary to purchase the Keystone Assets, and to purchase the Keystone Assets through his company, Dowcar.

18. The partners agreed to split the profits from selling the Keystone Assets on a 50/25/25 basis, meaning Downie would receive 50-percent and Cook and Whelan would split the remaining 50-percent evenly between them (25-percent each).

19. Cook and Whelan acted promptly on behalf of the Partnership. In the spring of 2021, Cook contacted Kent Rainville, a representative of TransCanada, and obtained a list of modular assets owned by TransCanada that were available for purchase (i.e., the Keystone Assets). On March 27, 2021, Whelan shared this list with Downie, and the next day, Downie texted Whelan, "We got this Bro, so let's make a few million over the next month." On April 15, 2021, Whelan texted Downie a slide deck (.pptx file) from TransCanada detailing the Keystone Assets.

COMPLAINT - 4

4853-3395-1204.2

Miller Nash LLP
605 5th Ave S, Ste 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

20. On April 16, 2021, Cook emailed Derek Montgomery, a representative of TransCanada (with Whelan cc'd), stating "[p]lease find this Offer to Purchase the material listed on page 2 of the attached the brochure in the amount of $7,000,000 USD loaded trucks, from Dowcar Metals Inc. of Kirkland Washington USA or Nominee." Ex. A (the "Offer").

21. Cook met with Montgomery on April 20, 2021, at Papa Charlie's restaurant in Cypress, Texas, to discuss purchasing the Keystone Assets.

22. On April 23, 2021, Montgomery responded to the Offer sent on April 16, 2021, stating "Can you confirm that Mark Whelan should be the contact for notices and contact information. Also, who will be signing for Dowcar and what is their title? As soon as I get this information and the resale certificate we are good to go. Attached is the BOS with that information listed." Ex. A. On the same day, Whelan responded to Montgomery, stating "Hey Derek, Thomas Downie-President will be signing for Dowcar. We'll get you the resale certificate ASAP. If you can, copy us both on the emails." *Id*.

23. Then, on April 23, 2021, Downie (through his company, Dowcar) entered into a Purchase and Sale Agreement with TransCanada to acquire 599 modular units for $7 million (the "Keystone Assets"). Ex. B (Purchase & Sale Agreement) (listing the Keystone Assets). Downie signed the Purchase & Sale Agreement in his capacity as a partner of the Partnership, as evidenced by the fact that he designated another partner, Whelan, as the Dowcar point of contact.

24. Downie entered into the Purchase & Sale Agreement using the Partnership's proprietary knowledge of the Keystone Assets, including the modulars list, that Cook and Whelan had obtained from TransCanada and shared with Downie pursuant to their Partnership Agreement.

25. The Purchase & Sale Agreement required $2 million upfront and proof of funds for the remaining $5 million by October 6, 2021. Ex. B. The "Keystone Assets" are described with particularity in Schedule A to the Purchase & Sale Agreement. *Id.,* at pp. 4–16.

COMPLAINT - 5

4853-3395-1204.2

Miller Nash LLP
605 5th Ave S, Ste 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

26.　　On April 27, 2021, the partners agreed for Downie and Cook to travel to Houston and work on the Keystone Assets acquisition. Downie and Cook stayed at the Houston Marriott in the Galleria, which Downie paid for. The next evening, on April 28, Cook and Downie met potential collaborators for dinner and discussed the purchase of the modular units and formulated plans for their resale, consistent with their shared goals.

27.　　On May 12, 2021, Downie texted Cook about the acquisition, stating ". . . I know it's [o]ur [b]est [i]nterest & TC Energy's too to [h]ave a [g]reat [p]artnership[.]" He added, ". . . [w]e can & [w]ill [p]erform on this if given the [c]hance", referring to the Partnership's acquisition of the Keystone Assets.

28.　　Soon after, Downie told Cook and Whelan that the deal to purchase the Keystone Assets from TransCanada had failed to close. Then, unbeknownst to Plaintiffs, Downie began collaborating with Defendants Knoppert, PK Consulting (Peter Knoppert's company), S. Scrivanich, and L. Scrivanich to secure financing to purchase the Keystone Assets without Plaintiffs' involvement. Downie's new collaborators provided $6.5 million in financing through their entity, Bridges West, and helped Downie finalize the purchase without Cook and Whelan's involvement or knowledge.

29.　　Upon information and belief, in December 2021, L. Scrivanich and S. Scrivanich formed a new entity, Workforce Modulars, for the purpose of participating in a new partnership and to hold the Keystone Assets.

30.　　On or about January 8, 2022, Dowcar (through his company, Dowcar) and L. Scrivanich (through his company, Workforce Modulars) signed an Assignment of Purchase & Sale Agreement whereby Dowcar assigned Dowcar's Purchase & Sale Agreement with TransCanada to Workforce Modulars, as assignee, with a purported effective date of October 7, 2021. Ex. C (Assignment of Purchase and Sale Agreement) (Jan. 10, 2022).

31.　　Upon information and belief, at the time of this assignment, all Defendants had actual or constructive knowledge that Downie obtained all the Keystone Assets information and

COMPLAINT - 6

4853-3395-1204.2

Miller Nash LLP
605 5th Ave S, Ste 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

the Purchase & Sale Agreement from his partnership with Plaintiffs. Defendants nonetheless agreed or consented to Downie's actions to assign the Purchase & Sale Agreement (i.e., the right to purchase Keystone Assets for $7 million) to an entity benefitting Defendants' partnership.

32. Defendants were aware that Downie assigning the Purchase & Sale Agreement from the Cook/Whelan–Downie Partnership to Defendants' entity would result in Defendants reaping 100-percent of the Keystone Asset profits and leave Plaintiffs with nothing.

33. In 2022, a legal dispute arose among the Defendants regarding the existence of a partnership agreement among them and the ownership of the Keystone Assets. In the lawsuit titled *Downie, et al. v. Scrivanich, et al.*, Case No. 22-2-09744-2 (the "King County Lawsuit") in the Superior Court of King County, Washington (the "King County Court"), Downie, Dowcar, Knoppert, and PK Consulting (the "Downie Plaintiffs") sued S. Scrivanich, L. Scrivanich, Workforce Modulars, and Bridges West ("Scrivanich Defendants") for breach of Defendants' oral partnership agreement regarding the Keystone Assets.

34. On December 13, 2023, Judge Paul M. Crisalli of the King County Superior Court granted a motion for partial summary judgment in favor of the Downie Plaintiffs (the "MSJ Order"), holding that "(1) a partnership exists between the four individual parties in this case [i.e., Downie, Knoppert, S. Scrivanich, and L. Scrivanich], the purpose of which was to purchase and resell the modulars, (2) [the Downie] Plaintiffs contributed $500,000 in furtherance of the partnership, (3) the modulars are partnership property, and (4) [the Scrivanich] Defendants have breached the partnership agreement." Ex. D (Order Granting Partial Summary Judgment in the King County Lawsuit entered December 13, 2023).

35. In late 2023, on or before the King County Court entered the MSJ Order, S. Scrivanich contacted Cook and Whelan seeking their testimony and/or evidence for the King County Lawsuit. In these talks, S. Scrivanich admitted that Defendants excluded Cook and Whelan from the Keystone Assets transaction and caused Plaintiffs significant financial harm.

COMPLAINT - 7

4853-3395-1204.2

Miller Nash LLP
605 5th Ave S, Ste 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

36. S. Scrivanich's admissions made it clear that the Defendants were aware that Downie was part of the Cook/Whelan–Downie Partnership from the beginning, and knowingly conspired with and caused Downie to breach Downie's fiduciary duty to Cook and Whelan by circumventing their partnership rights to the Keystone Assets.

37. Soon after the King County Court entered the MSJ Order, Defendants, upon information and belief, agreed to split possession and/or profits of the Keystone Assets resale among themselves. Throughout this time, Cook and Whelan remained excluded from the transaction and its benefits.

38. Cook and Whelan were deprived of their rightful share of the profits from the resale of the Keystone Assets, which Defendants valued at $100 million. Ex. E, at ¶ 13 (Complaint in the King County Lawsuit) ("Downie and Knoppert estimated that the replacement value of the like-new modules was over $100 million; that is, were similar modulars to be ordered today, the cost to purchase such modulars in brand new condition would amount to over $100 million.").

## CAUSES OF ACTION

39. Plaintiffs incorporate all previous paragraphs into each count, and each count incorporates all factual allegations from all other counts:

### I.  COUNT 1: BREACH OF CONTRACT

**(Against Downie)**

40. A valid and enforceable partnership agreement exists between Plaintiffs Cook and Whelan and Downie, whereby Plaintiffs identified the Keystone Assets, obtained the list of available modulars, negotiated with TransCanada, and provided other critical information to enable the Partnership to purchase the Keystone Assets.

41. Under the partnership agreement, Downie agreed to pursue acquisition of the Keystone Assets on behalf of the Partnership with Cook and Whelan, sell the Keystone Assets

COMPLAINT - 8

4853-3395-1204.2

Miller Nash LLP
605 5th Ave S, Ste 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

in furtherance of the same, and share in the profits from acquisition and/or sale of the Keystone Assets.

42. In exchange for their share efforts, the partners agreed to split the eventual profits on a 50/25/25 basis, with Downie receiving 50-percent and Cook and Whelan each receiving 25-percent.

43. Plaintiffs Cook and Whelan are proper parties to bring suit for breach of this Partnership Agreement.

44. Plaintiffs performed, tendered performance of, or were excused from performing their contractual obligations by, among other things acquiring the list of available modulars from TransCanada, negotiating the eventual sale price, and providing the Partnership's proprietary information to Downie so he could perform his partnership duties.

45. Downie partially performed his Partnership obligations by entering into the Purchase & Sale Agreement on behalf of the Partnership.

46. Downie breached the partnership agreement on January 8, 2022, when he, acting individually and/or thorough Dowcar, assigned the Purchase & Sale Agreement from Dowcar to Workforce Modulars and/or later shared in the fruits of the Keystone Assets with the other Defendants to the exclusion of Cook and Whelan's partnership rights.

47. As a direct and proximate result of Downie's breach, Cook and Whelan suffered injury in an amount equal to 50-percent of the ownership and/or profits from the purchase of the Keystone Assets and any sale or disposition thereof.

48. Plaintiffs are entitled to recover their reasonable attorney fees and costs incurred in bringing this action to the extent permitted by applicable law.

COMPLAINT - 9

4853-3395-1204.2

**Miller Nash LLP**
605 5th Ave S, Ste 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

## II.  COUNT 2: TORTIOUS INTERFERENCE WITH EXISTING CONTRACT

**(Against Dowcar Metals, Knoppert, PK Consulting, Samual Scrivanich, Larry Scrivanich, Bridges West, and Workforce Modulars)**

49.  A valid contractual relationship or business expectancy existed between Plaintiffs Cook and Whelan and Defendant Downie in that these three Parties formed a binding oral partnership agreement by which they were to purchase the Keystone Assets and share in the ownership and/or profits therefrom with 50-percent of the profits going to Defendant Downie and 25-percent each going to Plaintiffs Cook and Whelan, respectively.

50.  Defendants Dowcar Metals, Inc., Peter Knoppert, PK Consulting, LLC, Samual Scrivanich, Larry Scrivanich, Bridges West LLC, and Workforce Modulars LLC had knowledge of aforesaid relationship.

51.  With this knowledge, said Defendants caused intentional interference with the partnership between Plaintiffs Cook and Whelan and Defendant Downie by inducing or causing a breach or termination of the relationship or expectancy by (a) executing, or causing to be executed, an Assignment Agreement between Workforce Modulars and Dowcar on January 10, 2022, in order to obtain 100-percent of the Keystone Assets to the exclusion of Plaintiffs 50-percent partnership interest, and (b) acting in partnership with Downie to take possession of and/or profit from 100-percent of the Keystone Assets in conscious disregard of Plaintiffs' partnership rights to 50-percent thereof .

52.  Said Defendants interfered with the relationship or expectancy for an improper purpose or used improper means in that Defendants interfered with the intent to harm Plaintiffs Cook and Whelan by depriving them of their partnership interest and/or with the improper means of conspiring with Defendant Downie for Downie to breach his fiduciary duty to his existing partners, Plaintiffs Cook and Downie, by assigning the TransCanada Purchase & Sale Agreement to Workforce Modulars on January 10, 2022, and/or later sharing in the fruits of the

COMPLAINT - 10

4853-3395-1204.2

Miller Nash LLP
605 5th Ave S, Ste 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

Keystone Assets with the other Defendants to the exclusion of Cook and Whelan's partnership rights.

53. As a direct and proximate result of this conduct, Plaintiffs Cook and Whelan were injured in an amount equal to 50-percent of the ownership and/or profits from the purchase of the Keystone Assets and any sale or disposition thereof.

### III. COUNT 3: BREACH OF FIDUCIARY DUTY

**(Against Downie)**

54. By virtue of their partnership agreement, Defendant Downie owed a fiduciary duty to Plaintiffs Cook and Whelan to not pursue purchase of and profit from the Keystone Assets to the exclusion of Plaintiffs Cook and Whelan.

55. Defendant Downie breached that duty when he, acting in partnership with the other Defendants, by assigning the TransCanada Purchase & Sale Agreement to Workforce Modulars on January 10, 2022, and/or later sharing in the fruits of the Keystone Assets with the other Defendants to the exclusion of Cook and Whelan's partnership rights.

56. As a direct and proximate result of this conduct, Plaintiffs Cook and Whelan were injured in an amount equal to 50-percent of the ownership and/or profits from the purchase of the Keystone Assets and any sale or disposition thereof.

### IV. COUNT 4: CIVIL CONSPIRACY

**(All Defendants)**

57. Plaintiffs incorporate the allegations in each preceding cause of action herein.

58. All Defendants combined and entered into an agreement to accomplish the unlawful objectives of tortiously interfering with an existing partnership agreement between Plaintiffs Cook and Whelan and Defendant Downie, of breaching or inducing breach by Defendant Downie of his fiduciary duties to Plaintiffs Cook and Whelan under the same partnership agreement, by assigning the TransCanada Purchase & Sale Agreement to

COMPLAINT - 11

4853-3395-1204.2

**Miller Nash LLP**
605 5th Ave S, Ste 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

Workforce Modulars on January 10, 2022, and/or later sharing in the fruits of the Keystone Assets with the other Defendants to the exclusion of Cook and Whelan's partnership rights.

59. As a direct and proximate result of this conduct, Plaintiffs Cook and Whelan were injured in an amount equal to 50-percent of the ownership and/or profits from the purchase of the Keystone Assets and any sale or disposition thereof.

## V. COUNT 5: UNJUST ENRICHMENT / CONSTRUCTIVE TRUST
### (All Defendants)

60. Plaintiffs plead this cause of action the alternative to Counts 1–4.

61. A benefit was conferred upon all Defendants by Plaintiffs Cook and Whelan when Cook and Whelan informed Downie of the opportunity to purchase the Keystone Assets on the condition that Downie partner with Cook and Whelan to share in the purchase and profits of the Keystone Assets with Downie receiving 50-percent and Cook and Whelan both receiving 25-percent, respectively, of the profits thereof, and Downie then informed the other Defendants of the same opportunity.

62. Defendants had appreciation for and knowledge of said benefit in that they understood the value of the opportunity to purchase the Keystone Assets when the said benefit was conferred upon them.

63. The acceptance or retention by Defendants of the benefit (i.e., their acquiring and profiting from the Keystone Assets) under such circumstances as to make it inequitable for Defendants to retain the benefit without payment for its value, as Defendants were aware that Plaintiffs Cook and Whelan had an agreement with Defendant Downie to share in the purchase and profits of the Keystone Assets with Downie receiving 50-percent and Cook and Whelan both receiving 25-percent, respectively, of the profits thereof.

64. As a direct and proximate result of this conduct, Plaintiffs Cook and Whelan were injured in an amount equal to 50-percent of the ownership and/or profits from the purchase of the Keystone Assets and any sale or disposition thereof.

COMPLAINT - 12

4853-3395-1204.2

Miller Nash LLP
605 5th Ave S, Ste 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

65. In addition or in the alternative to monetary damages, Plaintiffs seek the imposition of a constructive trust on all profits, proceeds, and assets derived from the Keystone Assets in the possession of Defendants, to the extent necessary to restore Plaintiffs' 50-percent interest.

66. Plaintiffs have no adequate remedy at law.

## VI.    COUNT 6: ACCOUNTING

### (All Defendants)

67. Defendant Downie, as a partner in the Cook/Whelan–Downie Partnership, owed Plaintiffs fiduciary duties, including the duty to account for profits derived from partnership transactions.

68. Defendants have exclusive control over financial records relating to the purchase, assignment, and profits from the Keystone Assets, and Plaintiffs have been excluded from accessing these records.

69. An accounting is necessary to determine Plaintiffs' rightful share of the profits derived from the Keystone Assets.

70. Plaintiffs request that this Court order Defendants to provide a full and complete accounting of all transactions involving the Keystone Assets.

## VII.    COUNT 7: DECLARATORY JUDGMENT

71. There is an actual, present, and existing dispute, or the mature seeds of one, between the Parties as to the existence, terms, and effect of a partnership agreement between Plaintiffs Cook and Whelan and Defendant Downie.

72. The Parties have genuine and opposing interests in that a later partnership between Defendants Downie, Knoppert, S. Scrivanich, and L. Scrivanich operates to the exclusion of Plaintiffs Cook and Whelan's 50-percent partnership interest in the profits of the Keystone Assets.

COMPLAINT - 13

4853-3395-1204.2

Miller Nash LLP
605 5th Ave S, Ste 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

73. These opposing interests are direct and substantial in that Defendants are in possession of some or all of the Keystone Assets and/or have been receiving profits from the disposition of the Keystone Assets to the exclusion of Plaintiffs Cook and Whelan's 50-percent interest thereof.

74. Thus, Plaintiffs seek a judicial determination, which will be final and conclusive, that:

(a) A valid and enforceable partnership agreement exists between Plaintiffs Cook and Whelan and Defendant Downie whereby the same agreed to pursue purchase and sale of the Keystone Assets and split profits thereof with 50-percent to Defendant Downie and 25-percent each to Plaintiffs Cook and Whelan, respectively (the "Cook/Whelan–Downie Partnership);

(b) the Cook/Whelan–Downie Partnership was formed before any partnership agreement formed between Defendants Downie, Knoppert, S. Scrivanich, and L. Scrivanich to profit from the Keystone Assets;

(c) Plaintiffs Cook and Whelan each hold their own 25-percent interest in the total possession of and/or profit from the Keystone Assets;

(d) by virtue of the Cook/Whelan–Downie Partnership, Defendant Downie owns no more than a 50-percent interest in the total possession of and/or profit from the Keystone Assets;

(e) Defendants Downie, Knoppert, S. Scrivanich, and L. Scrivanich are collectively entitled to no more than 50-percent of the total possession of and/or profit from the Keystone Assets.

## PRAYER FOR RELIEF

Wherefore the Plaintiffs demand a trial by jury and pray that they be awarded relief as follows:

COMPLAINT - 14

4853-3395-1204.2

Miller Nash LLP
605 5th Ave S, Ste 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

(i) A money judgment against Defendants jointly and severally, for all actual and consequential damages in an amount to be proven at trial but no less than $75,000

(ii) Pre-judgment interest on the principal balance calculated per annum at the highest allowed rate until the date judgment is entered;

(iii) Post-judgment interest on the total judgment amount calculated per annum at the highest rate allowed from the date judgment is entered until fully paid;

(iv) All costs of court and reasonable attorneys' fees as provided by law;

(v) Equitable relief in an order that Defendants to provide a full and complete accounting of all transactions involving the Keystone Assets;

(vi) Further equitable relief in an order imposing a constructive trust on all profits, proceeds, and assets derived from the Keystone Assets to the extent necessary to restore Plaintiffs' 50-percent interest;

(vii) Declaratory relief that:

(a) A valid and enforceable partnership agreement exists between Plaintiffs Cook and Whelan and Defendant Downie whereby the same agreed to pursue purchase and sale of the Keystone Assets and split profits thereof with 50-percent to Defendant Downie and 25-percent each to Plaintiffs Cook and Whelan, respectively (the Cook/Whelan–Downie Partnership);

(b) the Cook/Whelan–Downie Partnership was formed before any partnership agreement formed between Defendants Downie, Knoppert, S. Scrivanich, and L. Scrivanich to profit from the Keystone Assets;

(c) Plaintiffs Cook and Whelan each hold their own 25-percent interest in the total ownership of and/or profit from the Keystone Assets;

COMPLAINT - 15

4853-3395-1204.2

Miller Nash LLP
605 5th Ave S, Ste 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

       (d)    by virtue of the Cook/Whelan–Downie Partnership, Defendant Downie owns no more than a 50-percent interest in the total ownership of and/or profit from the Keystone Assets;

       (e)    Defendants Downie, Knoppert, S. Scrivanich, and L. Scrivanich are collectively entitled to no more than 50-percent of the total ownership of and/or profit from the Keystone Assets; and

(viii)    All other just and proper relief to which Plaintiffs show themselves entitled.

DATED this 13th day of December, 2024.

                MILLER NASH LLP

*/s/ Jesús Miguel Palomares*
Jesús Miguel Palomares, WSB No. 51858
605 5th Ave. S., Suite 900
Seattle, WA 98104
Telephone: (206) 624-8300
Fax: (206) 340-0599
Email: jesus.palomares@millernash.com

**THE COBOS LAW FIRM**

*/s/ Andrew Cobos*
Andrew Cobos, TX Bar No. 24078352
*pro hac vice* application forthcoming
711 W. Alabama St.
Houston, TX 77006
Telephone: (713) 234-5860
Email: andrew@cobos.law

COMPLAINT - 16

4853-3395-1204.2

Miller Nash LLP
605 5th Ave S, Ste 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599

| | |
|---|---|
| 1 | **FOSTER YARBOROUGH PLLC** |
| 2 | *s/ Patrick Yarborough* |
| 3 | Patrick Yarborough, TX Bar No. 24084129 |
|   | *pro hac vice* application forthcoming |
| 4 | Benjamin F. Foster, TX Bar No. 24080898 |
|   | *pro hac vice* application forthcoming |
| 5 | Jeffrey Lucas "Luke" Ott, TX Bar No. 24116864 |
|   | *pro hac vice* application forthcoming |
| 6 | 917 Franklin Street, Suite 220 |
| 7 | Houston, Texas 77002 |
|   | Telephone: (713) 331-5254 |
| 8 | Facsimile: (713) 513-5202 |
|   | Email: patrick@fosteryarborough.com |
| 9 | ben@fosteryarborough.com |
|   | luke@fosteryarborough.com |
| 10 | |
| 11 | Attorneys for Plaintiffs |
|    | Mark Whelan & Chris Cook |

COMPLAINT - 17

4853-3395-1204.2

**Miller Nash LLP**
605 5th Ave S, Ste 900
Seattle, WA 98104
206.624.8300 | Fax: 206.340.9599