HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARK WHELAN & CHRIS COOK,

Plaintiffs,

v.

THOMAS DOWNIE; DOWCAR METALS, INC., PETER KNOPPERT; PK CONSULTING, LLC; SAMUEL SCRIVANICH; LAWRENCE "LARRY" SCRIVANICH; BRIDGES WEST, LLC; and WORKFORCE MODULARS, LLC,

Defendants.

Case No. 2:24-cv-02080-RAJ

ORDER ON DEFENDANTS' MOTIONS TO DISMISS

ORDER – 1

## I.    INTRODUCTION

THIS MATTER comes before the Court upon: (1) the Motion to Dismiss filed by Thomas Downie ("Downie") (the "Downie Motion," Dkt. # 16); (2) the Motion to Dismiss filed by Dowcar Metals, Inc. ("Dowcar Metals") (the "Dowcar Metals Motion," Dkt. # 18); (3) the Motion to Dismiss and Alternative Motion to Quash Service filed by Peter Knoppert ("Knoppert") (the "Knoppert Motion," Dkt. # 19); and (4) the Motion to Dismiss filed by PK Consulting LLC ("PK Consulting," and together with Downie, Dowcar Metals, and Knoppert, the "Defendants") (the "PK Consulting Motion," Dkt. # 20).    The Court has reviewed the Downie Motion, the Dowcar Metals Motion, the Knoppert Motion, and the PK Consulting Motion, all submissions in support of and in opposition to each motion, and the balance of the record.  *See* Dkt. ## 16–21, 29–32, 34– 37.    For the reasons set forth below, the Court **DENIES** the Downie Motion, and **GRANTS IN PART** each of the Dowcar Metals Motion, the Knoppert Motion, and the PK Consulting Motion.

## II.    BACKGROUND

In 2021, following the cancellation of the Keystone XL Pipeline project by the administration of President Biden, Plaintiffs Mark Whelan ("Whelan") and Chris Cook ("Cook") identified an opportunity to profit from the liquidation of modular housing units and other assets (the "Keystone Assets") owned by TransCanada Keystone Pipeline L.P. ("TransCanada").  Dkt. # 1 ¶ 15.  Plaintiffs allege that they formed a partnership, by oral agreement, with Downie to secure financing for the acquisition of the Keystone Assets; in exchange, Plaintiffs would "obtain and provide to Downie the list of the Keystone Assets available for sale along with contact and purchase information necessary to facilitate the transaction."  *Id.* ¶ 16–17.  Plaintiffs allege that the parties agreed to "split the profits from selling the Keystone Assets on a 50/25/25 basis," with Downie receiving

ORDER – 2

50% of the proceeds of the acquisition and each of Cook and Whelan receiving 25%. *Id.* ¶ 18. Plaintiffs aver that they "acted promptly" to fulfill their obligations on behalf of the partnership with Downie, obtaining the list of Keystone Assets from a representative of TransCanada and sharing the list with Downie in March and April of 2021. *Id.* ¶ 18. On April 16, 2021, Cook emailed a representative of TransCanada with an offer "from Dowcar Metals Inc." to purchase certain assets. *Id.* ¶ 20. A week later, on April 23, 2021, in response to a request from the TransCanada representative to identify the signatory for Dowcar Metals and the relevant contact for the transaction, Whelan responded: "Thomas Downie-President will be signing for Dowcar." *Id.* ¶ 21. On the same day, Dowcar entered into a Purchase and Sale Agreement (the "Purchase and Sale Agreement") with TransCanada to acquire 599 modular units for $7 million. *Id.* ¶ 23. Downie signed the Purchase and Sale Agreement. *Id.* In the following days, Downie and Cook travelled to Houston to meet with potential collaborators regarding the acquisition of the Keystone Assets. *Id.* ¶ 26.

However, Downie subsequently informed Plaintiffs that the deal to purchase the Keystone Assets from TransCanada failed to close. *Id.* ¶ 28. Plaintiffs allege that Downie and Dowcar Metals began collaborating with Defendants Knoppert, PK Consulting (Peter Knoppert's company), Samuel Scrivanich, and Lawrence Scrivanich to secure financing to purchase certain of the Keystone Assets (alternatively referred to herein as the "Modulars") without Plaintiffs' involvement or knowledge. *Id*. These collaborators were able to provide $6.5 million in financing in support of the purchase, which was further facilitated by the formation of a new entity called Workforce Modulars by Samuel Scrivanich and Lawrence Scrivanich (the "Scrivanich Defendants") in December 2021. *Id.* ¶ 28–29. Plaintiffs aver that this collaboration between the Defendants ultimately resulted in the assignment of the Purchase and Sale Agreement to

ORDER – 3

Workforce Modulars, which occurred on or about January 8, 2022, and with a purported effective date of October 7, 2021 (the "PSA Assignment"). *Id.* ¶ 30.

Subsequently, Downie and the Scrivanich Defendants became engaged in their own legal dispute in the Superior Court of King County, Washington regarding the existence of a partnership agreement among themselves and the ownership of the Keystone Assets. *Id.* ¶ 33. During the lawsuit, Samuel Scrivanich contacted Plaintiffs to seek their testimony in the action against Downie in King County Superior Court. *Id.* ¶ 35. Plaintiffs claim that Scrivanich admitted that certain of the other Defendants in this action excluded Plaintiffs from the purchase of the Keystone Assets and caused Plaintiffs significant financial harm. *Id.* Plaintiffs submit that Defendants' actions "deprived of their rightful share of the profits from the resale of the Keystone Assets, which Defendants valued at $100 million." *Id.* ¶ 38.

On the basis of the foregoing allegations, Plaintiff commenced the instant action, alleging the following causes of action against the Defendants: (1) Breach of Contract (against Downie); (2) Tortious Interference with Existing Contract (against Dowcar Metals, Knoppert, PK Consulting, Samual Scrivanich, Larry Scrivanich**,** Bridges West, and Workforce Modulars); (3) Breach of Fiduciary Duty (against Downie); (4) Civil Conspiracy (against all Defendants); (5) Unjust Enrichment/Constructive Trust (against all Defendants); (6) Accounting (against all Defendants); and (7) Declaratory Judgment. *Id.* ¶ 29–46. Defendants Downie, Dowcar Metals, Knoppert and PK Consulting subsequently filed motions to dismiss each of the claims applicable to them. Dkt. ## 16–20. Defendant Knoppert also seeks, in the alternative, to quash Plaintiffs' Affidavit of Service against him. Dkt. # 19.

ORDER – 4

### III.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In analyzing a motion to dismiss, courts "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). "Conclusory allegations and unreasonable inferences, however, are insufficient to defeat a motion to dismiss." *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).

Rule 12(b)(5) allows for dismissal based on insufficient service of process, allowing a defendant to challenge the method of service attempted by the plaintiff. Fed. R. Civ. P. 12(b)(5). Federal Rule of Civil Procedure 4(m) requires that a defendant be served within 90 days after a complaint is filed. Fed. R. Civ. P. 4(m). If a plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. *Id*. District courts have broad discretion to extend time for service under Rule 4(m) even without a showing of good cause. *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007); *United States v. 2,164 Watches, More or Less Bearing a Registered Trademark of Guess?, Inc.*, 366 F.3d 767, 772 (9th Cir. 2004). "In making extension decisions under Rule 4(m) a district court may consider factors like a statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service." *Efaw*, 473 F.3d at 1041.

ORDER – 5

## IV.   DISCUSSION

### A.   Downie Motion

Plaintiffs bring the following claims against Downie: (I) Breach of Contract; (III) Breach of Fiduciary Duty; (IV) Civil Conspiracy; (V) Unjust Enrichment/Constructive Trust; (VI) Accounting; and (VII) Declaratory Judgment. *See* Dkt. # 1 ¶¶ 40–48, 54–74. Downie seeks dismissal on the bases that Plaintiffs did not properly serve Downie, that the claims against Downie fall outside the three-year statute of limitations period applicable to each claim, and that the claims are barred by the doctrine of laches. Dkt. # 16 at 17–32. The Court will address each of these arguments in turn.

#### i.   Service of Process

Downie's first argument for dismissal is that Plaintiffs failed to properly serve him under Fed. R. Civ. P. 4, and that this Court therefore does not have jurisdiction over him. Dkt. # 16 at 15 (citing *Direct Mail Specialists v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988)). Plaintiffs served Downie by mail, which Downie contends is void because service by mail was unavailable under Washington law. Dkt. # 16 at 17. Specifically, Downie argues that applicable state law does not permit alternative service by mail on a resident where there is "no evidence suggesting the defendant left the state to evade process." *Id.* Here, however, the Court explicitly authorized service upon Downie by U.S. mail and certified mail in a previous Order on Plaintiffs' Motion for Alternative Service (the "Alternative Service Order"). Dkt. # 9 at 6. In doing so, the Court referenced the requisite criteria for alternative service by mail under Washington law, namely that (1) plaintiffs have made reasonably diligent efforts at personal service, and (b) the defendant resides in the state but has concealed himself in order to avoid service of process. *Id.* at 5 (citing *ME2 Prods., Inc. v. Alexander*, No 2:17-cv-1221-RSL, 2017 WL 4700182, at *1 (W.D. Wash. Oct. 19, 2017)). The Court proceeded to

ORDER – 6

analyze the evidentiary record, including Plaintiffs' *twelve* previous attempts to serve Downie in this litigation and the "extreme difficulty" they faced in doing so, and other litigants' difficulty in effectuating service upon him in separate actions, before concluding that both requirements for alternative service by mail had been satisfied as to Downie. Dkt. # 9 at 5–6. The Court rejects Downie's attempt to revisit Plaintiffs' Motion for Alternative Service at this juncture.

Downie alternatively argues that he should be dismissed from this action under Rule 12(b)(5) because Plaintiffs failed to serve him within 90 days of the filing of the Complaint and cannot show good cause for their failure to do so. Dkt. # 16 at 20–23. However, the record demonstrates that Plaintiffs actively pursued service of Downie during the 90 days after the filing of the Complaint and promptly sought relief from this Court by timely filing a Motion for Alternative Service on March 17, 2025.[1] Plaintiffs ultimately mailed the pleadings, by first-class mail and certified mail return receipt requested, to Downie's Bothell and Lacey addresses just one day after this Court issued its Alternative Service Order explicitly authorizing this method of service. *See* Dkt. ## 5, 6-1, 13. These circumstances illustrate that Plaintiffs exercised diligence in attempting to serve Downie during the 90-day period, timely sought relief from the Court, and promptly effectuated service in the manner authorized by the Court. Plaintiffs therefore easily show "good cause" for their failure to serve Downie within the 90 days following the filing of the Complaint. Even in the absence of a showing of good cause, given the lack of apparent prejudice to Downie, Downie's apparent notice of this action, and Plaintiffs' eventual service just one day after the Court's Alternative Service Order, the Court concludes that extending the time for service in this matter is well within the broad

---

[1] Downie argues that Plaintiffs' Motion for Alternative Service was filed untimely because "the 90-day period had passed." Dkt. # 16 at 21. However, the 90th day after the filing of the Complaint fell on a Sunday, Plaintiffs' deadline to file the Motion was extended through Monday, March 17, 2025. *See* Fed. R. Civ. P. 6(a)(1)(C) (extending deadlines falling over a weekend to the next business day).

ORDER – 7

discretion afforded to district courts under Rule 4(m).  The Court therefore declines to dismiss the Complaint against Downie on the basis of insufficient service.  *See Efaw*, 473 F.3d at 1041.

ii.  Statute of Limitations

Downie argues that Plaintiffs' claims against him are barred by the three-year statute of limitations that applies to each claim.  Dkt. # 16 at 24 (citing RCW 4.16.080(3) (three-year statute of limitations for oral contracts); RCW 4.16.080(2) (three-year statute of limitations for actions for "any other injury to the person or rights of another not hereinafter enumerated"); *Zuill v. Shanahan*, 80 F.3d 1366, 1369–70 (9th Cir.1996), *as amended* (June 14, 1996) (declaratory judgments claims are "subject to a statute of limitations generally applicable to civil claims)).  Washington law provides that a "cause of action accrues and the statute of limitations begins to run when a party has the right to apply to a court for relief."  *Shepard v. Holmes*, 345 P.3d 786, 790 (Wash. Ct. App. 2014) (quoting *O'Neil v. Estate of Murtha*, 947 P.2d 1252, 1254 (Wash. Ct. App. 1997)).  A plaintiff has this right "when the plaintiff can establish each element of the action."  *Id.*

Plaintiffs filed the Complaint initiating this action on December 16, 2024, just under three years prior to the date of the PSA Assignment in January 2022.  Plaintiffs rely on the PSA Assignment as triggering the alleged breach underlying their claims against Downie.  *See* Dkt. # 1 ¶¶ 30–32 (alleging that "Defendants were aware that Downie assigning the Purchase & Sale Agreement from the Cook/Whelan–Downie Partnership to Defendants' entity would result in Defendants reaping 100-percent of the Keystone Asset profits and leave Plaintiffs with nothing").

Downie, however, disputes that Plaintiffs' claims accrued on this date, instead arguing that they did so "*at the very latest* in October 2021, when the Downie/Knoppert/Scrivanich partnership purchased the Modulars."  Dkt. # 16 at 23–24

ORDER – 8

(emphasis added). Downie offers four alternative dates from Plaintiffs' Complaint upon which the initial breach underlying Plaintiffs' claims occurred, thus triggering the accrual of the applicable statutes of limitations: (1) in May 2021, when Downie allegedly "incorrectly informed Plaintiffs the purchase of the Modulars 'had failed to close,'" Dkt. # 16 at 25; (2) in May 2021, when Downie allegedly "collaborated with Defendants to purchase the Modulars without Plaintiffs' involvement," *id.*; (3) between May and October 6, 2021, when Downie is alleged to have secured funding to purchase the Modulars and "finalize the purchase without Cook and Whelan's involvement or knowledge," *id.*; and (4) in October of 2021, when Downie purchased the Modulars with Knoppert and the Scrivanich Defendants, *id.* However, drawing all reasonable inferences in Plaintiffs' favor, as the Court must do at the motion to dismiss stage, the Court cannot conclude that Plaintiffs' have pled that their partnership with Downie was "breached" at any of these points in time. Plaintiffs plausibly plead that they were shut out of the deal to purchase the Keystone Assets upon the assignment of the Purchase & Sale Agreement from Dowcar to Workforce Modulars in January 2022, nullifying Plaintiffs' purported rights under the partnership and resulting in damages. Dkt. # 1 ¶ 46 (Downie "breached the partnership agreement on January 8, 2022" by "assign[ing] the Purchase & Sale Agreement from Dowcar to Workforce Modulars").

Downie relies on an Amendment to the Purchase and Sale Agreement dated October 6, 2021 (the "October 2021 Amendment"), to argue that he secured financing and had completed the purchase of the Keystone Assets by this date. Dkt. # 34 at 8–9; Dkt. # 21-2. He contends that the October 2021 Amendment is incorporated by reference into the Complaint, as the alleged date that Defendants funded the purchase of October 6, 2021 is "central to Plaintiffs' claims." Dkt. # 34 at 9. Downie further argues that Plaintiffs have placed the October 2021 Amendment at issue through the PSA

ORDER – 9

Assignment, which purports to "assign the PSA and "*any amendments* and letter agreements thereto," effective as of October 7, 2021. *Id.* (citing Dkt. # 1-4). Finally, Downie notes that certain of Plaintiffs' factual allegations "necessarily rely on the final terms of the PSA." *Id* (citing Dkt. # 1 ¶¶ 28, 34, 51, 62–63; 48).

The Court acknowledges that Plaintiffs' Complaint relies heavily on the Purchase and Sale Agreement, and the PSA Assignment, which is derivative of the Purchase and Sale Agreement and forms the basis of their claims. The October 2021 Amendment appears to be another iteration of Purchase and Sale Agreement. The Court therefore concludes that judicial notice of the "existence and contents" of the October 2021 Amendment is appropriate.[2] *Realtek Semiconductor Corp. v. MediaTek, Inc.*, 732 F. Supp. 3d 1101, 1111 (N.D. Cal. 2024). However, at this stage, Plaintiffs have adequately pleaded that their injury arose from the *transfer* of the Purchase and Sale Agreement, via the PSA Assignment, and not any purported earlier amendment to the Purchase and Sale Agreement. While Downie relies on the October 2021 Amendment as evidence that the purchase of the Keystone Assets was completed as of October 2021, the Court declines to "assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018). Accordingly, dismissal of Complaint on the basis of the tolling of the statute of limitations is inappropriate as to Count I against Downie. This conclusion applies equally to Counts III-VII, which are either expressly premised upon the PSA Assignment, or otherwise rely on claims that do. *See* Dkt. # 1 ¶¶ 55 (Downie breached his fiduciary duty to Plaintiffs when he executed the PSA Assignment "on

---

[2] The Court also takes judicial notice of certain documents from court proceedings in the lawsuit between Downie and the Scrivanich Defendants. *See* Dkt. ## 17-1, 17-3, 17-4, and 17-5. The Court takes judicial notice of these documents as the proceedings can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" and can therefore be judicially noticed. FED. R. EVID. 201(b). However, the content of these documents does not alter the Court's conclusions as to the plausibility of Plaintiffs' claims.

ORDER – 10

January 10, 2022"), 58 (Defendants engaged in civil conspiracy when they "combined and entered into an agreement to accomplish the unlawful objectives of . . . assigning the TransCanada Purchase & Sale Agreement to Workforce Modulars on January 10, 2022"), 63 (Defendants unjustly enriched when Defendants "acquir[ed] and profit[ed] from" the acquisition); Dkt. # 16 at 28 (acknowledging that "the declaratory relief and accounting claims are based on Plaintiffs' untimely partnership and fiduciary duty claims, respectively").

### iii. Laches

Finally, Downie argues that dismissal is appropriate on the basis of laches. To establish laches, a party must demonstrate "(1) that the opposing party lacked diligence in pursuing its claim; and (2) that prejudice resulted from that lack of diligence." *Save the Peaks Coal. v. U.S. Forest Serv.*, 669 F.3d 1025, 1031 (9th Cir. 2012). When a claim is filed within the applicable limitations period, "the strong presumption is that laches is inapplicable." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002).

Downie asserts that Plaintiffs "knew they had a claim against Defendants" as early as May 12, 2021. Dkt. # 16 at 31. The Court rejects this argument for the same reasons articulated in its statute of limitations analysis. Downie separately argues that Plaintiffs "failed to act after the Downie/Scrivanich Lawsuit was publicly filed in June 2022," and after speaking to a defendant in that lawsuit in "late 2023" and learning of the King County Superior Court's ruling regarding the partnership contested in that action. *Id.* at 31–32. Even if Plaintiffs learned of the lawsuit between Downie and the Scrivanich Defendants in fall of 2023, however, this does not render dismissal under the doctrine of laches available. Plaintiffs' litigation theory does not necessarily mirror that of the parties to that litigation, and they ultimately retained counsel and prepared their

ORDER – 11

Complaint within the applicable limitations period. *Jarrow*, 304 F.3d at 835. While Downie protests that Plaintiffs' delay resulted in settlement with the Scrivanich Defendants on the basis that "the individual defendants were the only owners of the Modulars," Dkt. # 34 at 15, this alone is an insufficient showing of prejudice to disturb to strong presumption against laches.

**B.     Dowcar Metals Motion**

Plaintiffs bring the following claims against Dowcar Metals: (II) Tortious Interference with Existing Contract; (IV) Civil Conspiracy; (V) Unjust Enrichment/Constructive Trust; (VI) Accounting; and (VII) Declaratory Judgment. *See* Dkt. # 1 ¶¶ 49–53, 57–74. Dowcar Metals seeks dismissal of the claims against it on the bases of insufficient service of process, statute of limitations, and laches, and adds two arguments specific to Plaintiffs' accounting and unjust enrichment claims. Dkt. # 18 at 17–29.

i.   Service of Process

After filing the Complaint initiating this action, Plaintiffs unsuccessfully attempted to effectuate service upon Dowcar Metals numerous times at locations listed as its "principal address" or "principal office." Dkt. # 9 at 4. The Court therefore authorized alternative service upon Dowcar Metals via certified mail to an address in Lacey, Washington, and alternatively authorized service via the Washington Secretary of State. *Id.* (citing RCW 23.95.450(4)). The next day, Plaintiffs caused to be mailed the summons, complaint and Alternative Service Order to the Lacey address by first-class mail and certified mail return receipt requested. Dkt. # 13 ¶ 2. Plaintiffs also mailed the pleadings to Dowcar Metals via the Washington State Secretary of State, which confirmed delivery and perfection of service on June 5, 2025. *Id.* ¶ 3 & p. 90. Dowcar Metals does not appear to challenge the method of service utilized by Plaintiffs.

However, like Downie, Dowcar Metals challenges the timeliness of Plaintiffs' effectuation of service under Rule 12(b)(5) and the absence of good cause showing why service was not effectuated within this time period.

The Court again rejects this argument. Plaintiffs made an adequate showing of diligent efforts to serve Dowcar Metals in the 90 days following the filing of the Complaint. As the Court observed in the Alternative Service Order, Plaintiffs attempted to serve Dowcar Metals at its listed principal office as required by Washington law, but faced significant obstacles after learning that its "registered agent and principal office are inaccessible because their addresses are for a restricted luxury apartment in Bothell and a UPS mailbox in Lacey." Dkt. # 9 at 4. As discussed, Plaintiffs timely sought relief from this Court through the filing of their Motion for Alternative Service. Dkt. # 5. Finally, Plaintiffs immediately complied with the Court's Alternative Service Order, promptly sending Dowcar Metals the pleadings by certified mail and, when that mailing was returned undelivered, effectuating service through the Washington Secretary State. Dkt. # 13 ¶¶ 2–3. The Court therefore declines to dismiss the Complaint against Dowcar Metals on the basis of insufficient service.

ii. Accounting Claim

In response to the Dowcar Metals Motion, Plaintiffs concede that their claim for accounting against Dowcar Metals is subject to dismissal due to their failure to allege that Dowcar Metals owed Plaintiffs a fiduciary or contractual duty. Dkt. # 29 at 28. The Court accordingly dismisses Count VI of the Complaint with respect to Dowcar Metals.

iii. Unjust Enrichment and Declaratory Judgment Claims

Dowcar Metals argues that dismissal of the unjust enrichment claim against it is appropriate because Plaintiffs allege only that they conferred a benefit on Downie, not Dowcar Metals. Dkt. # 18 at 20–21. However, the Complaint provides that "a benefit

ORDER – 13

was conferred upon all Defendants by Plaintiffs Cook and Whelan when Cook and Whelan informed Downie of the opportunity to purchase the Modulars." Dkt. # 1 ¶ 61. Additionally, Plaintiffs allege that "Downie is the sole shareholder of Dowcar." *Id.* ¶ 4. The Complaint therefore plausibly pleads that Plaintiffs provided valuable information about the potential assets to Dowcar Metals.

Plaintiffs also argue that Dowcar Metals is not a proper party to the declaratory judgment claim. However, based on the allegations in the Complaint, including Downie's use of Dowcar Metals to secure funding for the acquisition of the Keystone Assets, Dowcar Metals is clearly an "interested party" to the controversy. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007).

The Court therefore declines to dismiss either Count V or Count VII against Dowcar Metals.

iv. Statute of Limitations

Like Downie, Dowcar Metals argues that Plaintiffs' claims against it are barred by the three-year statute of limitations that applies to each claim. Dkt. # 18 at 22. The Court rejects this argument for the same reasons discussed with respect to the Downie Motion. While Dowcar Metals is not subject to the Complaint's breach of contract claim, which applies only to Downie, Count II of the Complaint alleges that Dowcar Metals engaged in tortious interference with the partnership between Plaintiffs and Downie, including by executing or causing to be executed the PSA Assignment. *See* Dkt. # 1 ¶ 51 (Defendants tortiously interfered with the partnership by "executing, or causing to be executed, an Assignment Agreement between Workforce Modulars and Dowcar [Metals] on January 10, 2022, in order to obtain 100-percent of the Keystone Assets to the exclusion of Plaintiffs 50- percent partnership interest.") The remaining claims against Dowcar Metals, like those against Downie, are either expressly premised upon the PSA

ORDER – 14

Assignment, or otherwise rely on claims that do. Accordingly, the Court declines to dismiss the Complaint against Dowcar Metals on the basis of the tolling of the applicable statutes of limitations.

### v. Laches

Finally, Dowcar Metals argues that the claims against it are barred by laches due to Plaintiffs' failure to file suit following the Downie/Scrivanich lawsuit. Dkt. # 18 at 28–30. The Court rejects dismissal on this basis for the same reasons addressed with respect to the Downie Motion.

## C. Knoppert Motion

Plaintiffs bring the following claims against Knoppert: (II) Tortious Interference with Existing Contract; (IV) Civil Conspiracy; (V) Unjust Enrichment/Constructive Trust; (VI) Accounting; and (VII) Declaratory Judgment. *See* Dkt. # 1 ¶¶ 49–53, 57–74. Like Dowcar Metals, Knoppert seeks dismissal of the claims against him due to insufficient service of process, statute of limitations, and laches, and adds two arguments specific to Plaintiffs' accounting and unjust enrichment claims. Dkt. # 19 at 19–32. Knoppert separately moves to quash Plaintiffs' Affidavit of Service due to improper service. *Id.* at 19.

### i. Service of Process

Like Downie and Dowcar Metals, Plaintiffs unsuccessfully attempted to effectuate service upon Knoppert several times in the 90 days following the filing of the Complaint. Dkt. # 9 at 8. The Court therefore authorized alternative service upon Knoppert via mail to an address in Laguna Niguel, California, where a neighbor had confirmed he resides, and the address listed for the principal office of his business, PK Consulting, in Sacramento. *Id.* at 9. The next day, Plaintiffs caused to be mailed the summons, complaint and Alternative Service Order to the Laguna Niguel and Sacramento addresses

ORDER – 15

by first-class mail and certified mail return receipt requested. Dkt. # 13 ¶ 6. Plaintiffs indicated that the mailings to these addresses were not returned and are presumed delivered. *Id.* ¶ 7.

Knoppert now moves for dismissal, or alternatively to quash the Affidavit of Service, on the basis that service by mail was not effected under California law. Dkt. # 19 at 19. Specifically, Knoppert argues that, since Plaintiffs did not obtain a returned signed acknowledgment or leave a copy of the pleadings at the person's office or dwelling, Plaintiffs did not comport with the requirements of Cal. Code. Civ. P. § 415.20(a) or (b). *Id.* However, courts have recognized that alternative service is appropriate "when plaintiffs' reasonable attempts to effect service via expressly sanctioned techniques have failed." *Mesa Underwriters Specialty Ins. Co. v. Hulett*, 2022 WL 2189360, at *1 (C.D. Cal. May 19, 2022). Alternative service is valid where it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Claimtek, LLC v. Med Off. Grp., Inc.*, No. 8:22-CV-01696-FWS-DFM, 2023 WL 2560050, at *1 (C.D. Cal. Jan. 18, 2023). Here, the Court expressly authorized alternative service by mail after finding that plaintiffs' reasonable attempts at serving Knoppert via expressly sanctioned methods had failed. Dkt. # 9 at 9. Plaintiffs promptly effectuated service by the alternative method approved by the Court, which was reasonably calculated to apprise Knoppert of the pendency of this action. Dkt. # 13 ¶ 6. The Court rejects Knoppert's argument that dismissal is appropriate and denies his alternative motion to quash.

Like Downie and Dowcar Metals, Knoppert also challenges Plaintiffs' effectuation of service under Rule 12(b)(5) as untimely and without good cause. The Court again rejects this argument. As the Court observed in the Alternative Service Order, Plaintiffs made an adequate showing of diligent efforts to serve Knoppert in the

ORDER – 16

90 days following the filing of the Complaint, including "five unsuccessful attempts to serve Knoppert between January 2, 2025, and February 28, 2025, despite a neighbor confirming that Knoppert indeed resides at the Laguna Niguel address." Dkt. # 9 at 8–9. And, as discussed, Plaintiffs timely sought relief from this Court through the filing of their Motion for Alternative Service and Plaintiffs immediately complied with the Court's Alternative Service Order in serving Knoppert by mail. Dkt. # 5, 13 ¶¶ 6–7. The Court therefore declines to dismiss the Complaint against Knoppert, or quash the Affidavit of Service, on the basis of insufficient service.

      ii.   <u>Accounting and Unjust Enrichment Claims</u>

In response to the Knoppert Motion, Plaintiffs concede that their claim for accounting against Knoppert is subject to dismissal due to their failure to allege that Knoppert owed Plaintiffs a fiduciary or contractual duty. Dkt. # 31 at 27. Similarly, Plaintiffs concede that dismissal of their unjust enrichment claim is appropriate due to their failure to allege that Plaintiffs directly conferred a benefit upon Knoppert. *Id.* The Court accordingly dismisses Counts V and VI of the Complaint with respect to Knoppert.

      iii.   <u>Statute of Limitations</u>

Knoppert argues that Plaintiffs' remaining claims against him are barred by the three-year statute of limitations that applies to each claim. Dkt. # 19 at 24. The Court rejects this argument for the same reasons discussed with respect to the Downie Motion and the Dowcar Metals Motion. As with Dowcar Metals, Count II of the Complaint alleges that Knoppert engaged in tortious interference with the partnership between Plaintiffs and Downie, including by executing or causing to be executed the PSA Assignment. *See* Dkt. # 1 ¶ 51. The remaining claims against Knoppert are either expressly premised upon the PSA Assignment, or otherwise rely on claims that do.

Accordingly, the Court declines to dismiss the Complaint against Knoppert on the basis of the tolling of the applicable statutes of limitations.

### iv. Laches

Finally, Knoppert argues that the claims against him are barred by laches due to Plaintiffs' failure to file suit following the Downie/Scrivanich lawsuit. Dkt. # 19 at 30–32. The Court rejects dismissal on this basis for the same reasons addressed with respect to the Downie Motion.

### D. PK Consulting Motion

Plaintiffs bring the following claims against PK Consulting: (II) Tortious Interference with Existing Contract; (IV) Civil Conspiracy; (V) Unjust Enrichment/Constructive Trust; (VI) Accounting; and (VII) Declaratory Judgment. *See* Dkt. # 1 ¶¶ 49–53, 57–74. Like Dowcar Metals and Knoppert, PK Consulting seeks dismissal of the claims against it due to insufficient service of process, statute of limitations, and laches, and adds several arguments specific to certain causes of action. Dkt. # 20 at 17–32.

### i. Service of Process

After filing the Complaint, Plaintiffs unsuccessfully attempted to effectuate service upon PK Consulting, a California entity, at a San Diego address listed by its registered agent and a Sacramento addressed identified by PK Consulting as the location of its physical office. Dkt. # 9 at 7. The Court accordingly authorized alternative service upon PK Consulting through the California Secretary of State. *Id.* (citing *Arias v. BL Custom Upholstery, Corp.*, No. CV 23-7256 PVC, 2023 WL 9418433, at *2 (C.D. Cal. Sept. 29, 2023); Cal. Corp. Code § 1702(a). Plaintiffs subsequently filed an Affidavit of Service indicating that, within the two days of the Court's issuance of its Alternative Service Order, service had been effectuated upon PK Consulting in person and via the

ORDER – 18

California Secretary of State. Dkt. # 12. PK Consulting does not appear to challenge the method of service utilized by Plaintiffs. However, like the other Defendants, it challenges the purported untimeliness of Plaintiffs' service under Rule 12(b)(5) without good cause. Dkt. # 20 at 17–20.

As with the other Defendants, the rejects this argument. Plaintiffs made an adequate showing of diligent efforts to serve PK Consulting in the 90 days following the filing of the Complaint. As the Court observed in the Alternative Service Order, Plaintiffs attempted to serve PK Consulting at its listed addresses in San Diego and Sacramento, with the process server noting that the San Diego location was occupied by different tenants at the time of the attempted service. Dkt. # 9 at 7. As previously discussed, Plaintiffs' subsequent motion for relief from the Court was timely. Finally, as with the other Defendants, Plaintiffs promptly complied with the Court's Alternative Service Order, effectuating service upon PK Consulting via the California Secretary of State (and in person) within days of obtaining relief. Dkt. # 12. The Court therefore declines to dismiss the Complaint against PK Consulting on the basis of insufficient service.

ii. Accounting and Unjust Enrichment Claims

As with Knoppert, in response to the PK Consulting Motion, Plaintiffs concede that their claim for accounting is subject to dismissal due to their failure to allege that PK Consulting owed Plaintiffs a fiduciary or contractual duty. Dkt. # 32 at 28. Similarly, Plaintiffs concede that dismissal of their unjust enrichment claim against PK Consulting is appropriate due to their failure to allege that Plaintiffs directly conferred a benefit upon PK Consulting. *Id.* The Court accordingly dismisses Counts V and VI of the Complaint with respect to PK Consulting.

iii. Declaratory Judgment, Tortious Interference and Civil Conspiracy Claims

ORDER – 19

PK Consulting argues that it is not a proper party to the declaratory judgment claim because the partnership dispute concerns Plaintiffs and Downie. Dkt. # 20 at 23–24. However, based on the allegations in the Complaint, including the claim that PK Consulting "shar[ed] in the fruits" of the Modulars to which Plaintiffs were purportedly entitled, Dkt. # 1 ¶ 58, PK Consulting is clearly an "interested party" to the controversy. *See MedImmune*, 549 U.S. at 126.

PK Consulting's arguments that Plaintiffs failed to allege tortious interference and civil conspiracy are similarly unavailing. The Complaint provides that PK Consulting "act[ed] in partnership with Downie to take possession of and/or profit from 100-percent of the [Modulars[.]" Dkt #1 ¶ 51. Additionally, the Complaint identifies PK Consulting as a party to the PSA Assignment, thereby a party to the alleged tortious interference with the partnership between Plaintiffs and Downie. *Id.* ¶ 58.

The Court therefore declines to dismiss Counts II, IV, and VII against PK Consulting.

iv. <u>Statute of Limitations</u>

Like the other Defendants, PK Consulting argues that Plaintiffs' remaining claims against it are barred by the three-year statute of limitations that applies to each claim. Dkt. # 20 at 24. The Court rejects this argument for the same reasons discussed with respect to the Downie Motion, the Dowcar Metals Motion, and the Knoppert Motion. As with Dowcar Metals and Knoppert, Count II of the Complaint alleges that PK Consulting engaged in tortious interference with the partnership between Plaintiffs and Downie, including by executing or causing to be executed the PSA Assignment. *See* Dkt. # 1 ¶ 51. And as with the other Defendants, the remaining claims against PK Consulting are either expressly premised upon the PSA Assignment, or otherwise rely on claims that do.

ORDER – 20

Accordingly, the Court declines to dismiss the Complaint against PK Consulting on the basis of the tolling of the applicable statutes of limitations.

      v.  Laches

Finally, like the other Defendants, PK Consulting argues that the claims against it are barred by laches due to Plaintiffs' failure to file suit following the Downie/Scrivanich lawsuit. Dkt. # 20 at 30–32. The Court rejects dismissal on this basis for the same reasons addressed with respect to the Downie Motion.

## V.    CONCLUSION

For the foregoing reasons, the Court **DENIES** the Downie Motion, and **GRANTS IN PART** each of the Dowcar Metals Motion, the Knoppert Motion, and the PK Consulting Motion.

DATED this 31st day of March, 2026.

_____
The Honorable Richard A. Jones
United States District Judge

ORDER – 21